## PATRICIA HARVEY ET AL. *v.* ROBERT DADDONA, SR., ET AL.
### (10868)

DALY, LANDAU and HEIMAN, Js.

Argued September 21—decision released November 3, 1992

*Raymond A. Garcia,* with whom, on the brief, was *Justine Fitzgerald Miller,* for the appellant (defendant).

*Barry B. Johnson-Fay,* for the appellees (plaintiffs).

HEIMAN, J. The defendant appeals from the trial court's judgment in the plaintiffs' favor rendered in this action in which the plaintiffs sought money damages, declaratory relief and a mandatory injunction. On appeal, the defendant claims that the trial court improperly (1) found that the defendant's obligation for his sons' "reasonable college expenses" required him to pay full tuition and all related expenses at schools of his sons' choosing, regardless of the costs, and (2) issued a mandatory injunction as a remedy in a breach of contract claim for money damages.[1] We affirm the judgment of the trial court.

The trial court found the following facts. The plaintiffs, Patricia Harvey and her two sons, Robert Daddona, Jr., and Peter Daddona, brought this action against the defendant, Robert Daddona, Sr., individually and as trustee, to enforce both a separation agreement between Patricia Harvey and Robert Daddona, Sr., and a trust agreement in which Robert Daddona, Sr., was the settlor and trustee and his sons, Robert Daddona, Jr., and Peter Daddona, were the beneficiaries. They sought money damages for past educational expenses and declaratory and injunctive relief for Peter's future college expenses.

---

[1] Subsequent to the completion of oral argument, the defendant attempted to file certain material for consideration by the court. The plaintiffs objected to its consideration. Treating the objection as a motion to strike, we granted the motion and gave no consideration to the material.

Patricia Harvey and the defendant were married in 1966. In May, 1968, their first son, Robert, Jr., was born. Two years later, in August, 1970, their second son, Peter, was born. The parties' marriage was dissolved in 1975. They executed a separation agreement, which was incorporated into the judgment of dissolution and the defendant executed a separate trust agreement. Paragraph four of the separation agreement contained the following provision concerning the funding of the college education of their sons Robert, Jr., and Peter:

"4. College Education. Husband shall pay for the college education of each of the minor children if:

(a) the children desire to attend college, and

(b) they have the aptitude to attend college.
Husband's obligation for said college education shall continue until five (5) years have elapsed from the anticipated high school graduation date of each child, but in no event shall Husband's obligation continue after each child has passed the age of 23 years, or after his death."

The fifth paragraph of the separation agreement provided for the creation of a trust agreement to secure the defendant's obligation.[2]

The trust agreement sets forth the duties and obligations of the defendant. It provides that the corpus of the trust is real property located on Kukas Lane in Waterbury. The income from that trust is to be paid to the defendant as long as he is not in default of his

---

[2] That paragraph provides:

"5. Trust Agreement. As security for Husband's obligations as set forth in Paragraphs 3 and 4 above, Husband shall hold the property at 300 Kukas Lane, or a parcel of equal value, as Trustee, for the benefit of said minor children. The trust agreement, attached hereto as Exhibit A, more fully describes said trust obligation, and either a deed expressing said obligation, or Exhibit A, shall be recorded on the land records of the Town of Waterbury."

obligations for the support and education of his sons. If default occurs, the trustee is obligated to pay the college expenses of his sons from the income and principal of the trust. Notice of default by either son or any person acting on their behalf is to be evidence of default unless a court rules to the contrary.

Paragraph three of the trust agreement elaborates on the defendant's obligations relating to the college education of his sons. It provides: "The obligations . . . are to pay expenses of up to four (4) years of college education for each of the children, such four (4) years to occur within five (5) years of the anticipated graduation of each child from high school; provided, however, that in no event shall the obligation to either child continue after the child attains the age of twenty-three (23) years . . . and, further, provided that the obligation to each child shall exist only if the child shall have the ability and inclination to attend college. Expenses of college education shall include the reasonable costs of tuition and other required fees of the college, room and board, books, and other essential costs. Each child shall consult with and consider the wishes of ROBERT L. DADDONA with respect to the college the child will attend, but the wishes of ROBERT L. DADDONA for the choice of college shall not be binding upon the children." Although granting the defendant and his sons or their guardian the ability to amend or revoke the agreement, the trust agreement restricts the ability to waive the sons' rights to a college education.

Robert, Jr., graduated from high school in June, 1986, and matriculated at Northeastern University in the fall of 1986. The defendant paid the costs of his first year at college. Experiencing academic difficulty, Robert, Jr., did not return to Northeastern University after his freshman year. While living with his father, he enrolled at Mattatuck Community College and com-

pleted three semesters. During the spring semester of 1989, he matriculated at New Hampshire College. The trial court found that pursuant to the separation and trust agreements, the defendant was obligated to pay for only four years of his son's college education. The court calculated that he owed $9049.76 for these expenses. In rendering its judgment, however, it found that the defendant was entitled to a credit of $4200 for educational expenses that he had paid for what would have been Robert, Jr.'s fifth academic year.[3] The court thus rendered judgment in favor of Robert, Jr., for $4849.76, the balance due after allowing the credit to the defendant.

Peter graduated from high school in June, 1989. He entered Norwich University in the fall of 1989. The defendant paid Peter's educational expenses for his first two years at Norwich University. He failed, however, to pay his son's educational expenses for the 1991 fall term. His failure to pay the college charges jeopardized Peter's ability to undertake his final examinations and receive academic credits for courses he took during that semester.

The court found that the defendant was obligated to pay Peter $771.98 to reimburse him for college expenses. By way of declaratory relief, the trial court ordered that, in addition to the $771.98 damages payable to Peter, the defendant pay the cost of Peter's tuition, room, board, college fees and books for the 1991–92 academic year within ten days of receipt of those bills and pay for any of the academic years in which Peter is engaged in obtaining a college education up to a total of four years of college or until he attains age twenty-three. The court further enjoined the defendant in his individual capacity from failing to

---

[3] The trust agreement provides that the defendant is obligated to pay for four years of college.

pay for future expenses[4] within ten days of presentation of bills and in his capacity as trustee from failing to pay all such expenses from the trust upon a declaration of default in the performance of his individual obligation. This appeal followed.

I

The defendant first claims that the trial court improperly found that his obligation for his sons' reasonable college expenses required him to pay full tuition and all related expenses at schools of his sons' choosing regardless of the amount. We disagree.

Separation agreements executed with and incorporated into dissolution decrees are construed and enforced as contracts.[5] *Barnard* v. *Barnard,* 214 Conn. 99, 109, 570 A.2d 690 (1990); *Greenburg* v. *Greenburg,* 26 Conn. App. 591, 595, 602 A.2d 1056 (1992). Construction of these agreements presents issues of fact to be resolved by the trial court as the trier of fact. *Greenburg* v. *Greenburg,* supra. We review the trial court's construction of these agreements under a "clearly erroneous" standard. *Zivic* v. *Zivic,* 26 Conn. App. 5, 7–8, 596 A.2d 475 (1991); *Lavigne* v. *Lavigne,* 3 Conn. App. 423, 427, 488 A.2d 1290 (1985). Under this standard, an appellate court's role is to determine if the trial court could reasonably have decided the way it did. *Greenburg* v. *Greenburg,* supra, 596. "[E]very presumption is given in favor of the correctness of the trial court's action." Id.; *Gallagher* v. *Gallagher,* 11 Conn. App. 509, 514, 528 A.2d 379 (1987).

---

[4] At the trial court's urging, the parties closed the pleadings and agreed that the hearing as to preliminary relief should be consolidated with a hearing as to permanent relief.

[5] The trial court properly acknowledged that it lacked the authority to enforce by powers of contempt the portions of the dissolution judgments entered before October 1, 1977, that apply to obligations to support or educate children after they reach the age of majority. General Statutes § 46b-66; *Lavigne* v. *Lavigne,* 3 Conn. App. 423, 425, 488 A.2d 1290 (1985).

To give meaning to contracts, courts interpret the intent of the parties by construing the whole contract and all relevant provisions together. *Barnard* v. *Barnard,* supra. In construing contract terms, the court seeks to effectuate the intent of the parties. Id.; *Greenburg* v. *Greenburg,* supra. To ascertain the parties' intent, the courts " 'consider not only the language used in the contract but also the circumstances surrounding the making of the contract, the motives of the parties and the purposes which they sought to accomplish.' " *Barnard* v. *Barnard,* supra, 109–10, citing *Connecticut Co.* v. *Division 425,* 147 Conn. 608, 616, 164 A.2d 413 (1960). The parties' intent is ascertained by a "fair and reasonable construction of the written words and . . . the language used must be accorded its common, natural, and ordinary meaning and usage where it can be sensibly applied to the subject matter of the contract." *Sturman* v. *Socha,* 191 Conn. 1, 10, 463 A.2d 527 (1983). Secret intentions entertained by the parties are not considered by a court when determining their intent. *Greenburg* v. *Greenburg,* supra.

The defendant argues that the trial court's interpretation of the term "reasonable costs" in the trust agreement ignored the generally accepted meaning of that term and failed to give effect to the clause in paragraph three of that agreement and in the separation agreement limiting his obligation for his sons' college expenses. The third paragraph describes the defendant's obligations for his sons' college expenses. It provides that "[e]xpenses of college education shall include the *reasonable costs* of tuition and other required fees of the college, room and board, books, and other essential costs." (Emphasis added.) He argues that by failing to follow generally accepted principles of contract interpretation the court misconstrued his obligation.

The trial court logically interpreted the separation agreement, trust agreement and its provision for "rea-

sonable costs" to mean that the defendant has the obligation to pay the full tuition and other expenses related to securing an education at the colleges chosen by his sons for the defined periods. It noted that the defendant sought to have the court construe the term "reasonable costs" to mean a range that the defendant regards as reasonable. The court rejected this interpretation by examining other language in the separation and trust agreements. The sentence following the one that involves payment of "reasonable costs" provides that the children shall consult their father about the colleges that they will attend, but are not bound by their father's choice. This language supports the trial court's finding that the father is obligated to pay in full all of his sons' reasonable college expenses. His obligation is not limited by an amount that he deems to be reasonable. The trust agreement delineates the father's obligations under the separation agreement. The separation agreement further describes the father's obligation to pay for his sons' college educations. It provides that he "shall pay for the college education of each of the minor children." The defendant has failed to meet his burden of proving that the court's interpretation is clearly erroneous. *Zivic* v. *Zivic,* supra.

The defendant argues, as an alternative construction of the word "reasonable," that it was intended to impose some limit on the dollar amount he would be obligated to pay for his sons' college expenses.[6] The trial court's rejection of this argument and its interpretation of the intent and meaning of the separation agreement, trust agreement and their provisions con-

---

[6] The defendant did not argue that even under the trial court's definition of "reasonable costs" his sons' college expenses were unreasonable. The defendant has the burden of establishing that the college related expenses were unreasonable. He has failed to meet this burden. The court held that the facts did not indicate that the plaintiffs were seeking expenses that were unreasonably incurred in the pursuit of their college educations.

cerning the defendant's obligation to pay his sons' college expenses are not clearly erroneous.

## II

The defendant next asserts that the trial court improperly issued a mandatory injunction as a remedy in a breach of contract action for money damages. We conclude that the trial court properly found that Peter was entitled to injunctive relief.

The granting of injunctive relief rests within the discretion of the trial court. *Walton* v. *New Hartford,* 223 Conn. 155, 165, 612 A.2d 1153 (1992); *Dukes* v. *Durante,* 192 Conn. 207, 225, 471 A.2d 1368 (1984). To obtain such relief, the applicants must demonstrate that they would suffer irreparable harm and that they lack an adequate remedy at law. *Walton* v. *New Hartford,* supra; *Stocker* v. *Waterbury,* 154 Conn. 446, 449, 226 A.2d 514 (1967). Injunctions should not be issued when damages can adequately protect the injured party. *Belinsky* v. *Belinsky,* 5 Conn. App. 133, 136, 497 A.2d 84 (1985). Our review of the trial court's granting of injunctive relief is limited to determining whether the decision was based on erroneous statements of law or on an abuse of discretion. *Walton* v. *New Hartford,* supra. The defendant's son Peter established that he would suffer irreparable harm and lacked an adequate remedy at law. Unless his tuition expenses were paid, Peter risked losing all credits for the courses in which he was enrolled during the 1991 fall semester and his opportunity to enroll in the spring semester. Under the circumstances, money damages do not constitute an adequate remedy at law. A judgment in his favor could not be collected prior to the school's tuition deadline. The defendant's failure to pay his expenses is also capable of repetition. Peter would be delayed in collecting his expenses until years after he

was entitled to complete his education. The issuance of the mandatory injunction was appropriate and, thus, was not an abuse of discretion.

The judgment is affirmed.

In this opinion the other judges concurred.