ELISABETH F. S. SOLOMON *v.* HALL-BROOKE
FOUNDATION, INC.
(11152)
(11153)

O'CONNELL, FOTI and HEIMAN, Js.

Argued November 30, 1992—decision released January 26, 1993

*John R. Williams,* for the appellant-appellee (plaintiff).

*Dorit S. Heimer,* with whom was *William J. Doyle,* for the appellee-appellant (defendant).

HEIMAN, J. The plaintiff appeals and the defendant cross appeals from the trial court's judgment rendered in favor of the plaintiff for back rent owed to her by the defendant.[1] The trial court held that the plaintiff was entitled to back rent, but limited that amount to $40,700 per year beginning February 17, 1982, and continuing without increase, except periodic interest, to

---

[1] This opinion addresses two of five appeals before this court arising from a single trial of eight consolidated actions between the plaintiff, Elisabeth F. S. Solomon, and the defendants, Hall-Brooke Foundation, Inc., and individuals involved with the foundation.

the present. On appeal, the plaintiff asserts that the trial court improperly failed to order the defendant to pay (1) back rent for the years prior to 1982, (2) periodic increases in the extra rent owed, pursuant to an escalator clause, § 2.01 of its lease with the plaintiff, and (3) the plaintiff's attorney's fees and expenses in this litigation pursuant to the requirements of § 14.01 of its lease with the plaintiff. The defendant cross appeals asserting that the trial court (1) improperly held that the plaintiff was entitled to any additional rent, and (2) abused its discretion in awarding prejudgment interest.[2] We affirm the judgment in part and reverse it in part.

The trial court found the following facts. In 1964, the plaintiff, Elisabeth F. S. Solomon, purchased the Hall-Brooke Hospital in Westport and the twenty-four acres of land on which it was located. The plaintiff held the land and buildings in a corporation known as Delmon, Inc. The hospital was held through a corporation known as IHC Corporation which was owned by the plaintiff. Delmon, Inc., leased the land and buildings to IHC Corporation. In 1966, the plaintiff created the defendant, Hall-Brooke Foundation, Inc., a charitable corporation. The defendant accepted assignment of the tenant's rights and obligations under the 1964 lease between Delmon, Inc., and IHC Corporation.

In 1969, the plaintiff and the defendant entered into a new fifty year lease. Section 27.01 of this lease provides that the "Landlord hereby grants Tenant permission to construct the Children's Residential Treatment Center Complex [children's complex] on the premises, the plans and exact location of which shall be first approved by the Landlord. The amount of land anticipated for said Complex is approximately five (5) acres

---

[2] The four simultaneously filed appeals were consolidated for argument by this court. A fifth appeal is not yet ready for argument.

and has a present anticipated cost of $3,500,000 to $5,000,000. Any or all of said Complex may be commenced at any time after the date hereof." Section 28.02 of this lease provides: "In the event enlargement or substantial alteration of the present facilities becomes necessary all plans and projections must first be submitted to Landlord for approval and consent, which approval and consent will not be unreasonably withheld providing that the general character and use of the premises does not change, and further provided that the rental payments shall be adjusted to reflect the fair value of the land and other use of the facilities brought about by said enlargement or substantial alteration of the facilities." The lease also contains an escalator clause. Section 2.01 provides in part that after January 1, 1974, the total "rent shall be increased by ten (10%) percent for the next five year period; and thereafter the rent shall be increased at the end of each succeeding five (5) year period by ten (10%) percent of the rent of the previous five (5) year period as escalated."

In 1975, the defendant constructed a 10,000 square foot school that was part of the children's complex. The school occupied 5000 square feet on one floor. The remaining 5000 square feet were used for storage and maintenance for the entire institution. Prior to this time, a portable school building capable of housing approximately twenty-five students was located on the Hall-Brooke grounds.

On May 22, 1980, the defendant removed the plaintiff from all of her positions at Hall-Brooke. Nearly two years later on February 17, 1982, the plaintiff laid siege on the Hall-Brooke premises, seized physical control of the premises with the aid of uniformed guards and a guard dog, ensconced herself in the executive offices, purported to terminate and bar entry to Hall-Brooke staff and others, gave press releases announcing her

reascendance as executive director, and refused to abdicate her throne until ordered to do so by a restraining order.[3]

After her removal from her positions at Hall-Brooke, the plaintiff remained the landlord and received rent from the institution. She felt, however, that the rent paid was not the amount specified in the lease. She believed that she was entitled to additional rent for the school. Prior to her removal from her positions at Hall-Brooke, the plaintiff had not demanded increased rent for the school. At trial, she testified that she had offered the board of trustees a deferral of the rent until the school became profitable.

After a trial on the merits, the court found that the plaintiff was entitled to back rent.[4] This amount, however, was limited to the sum of $40,700[5] per year beginning February 17, 1982, through February, 1992, for a total of $407,000. The court also awarded the plaintiff prejudgment interest at 10 percent per year pursuant to General Statutes § 37-3a for a total amount of $223,850.[6] Both parties appealed. Additional facts will be set forth where they are relevant to each issue.

[3] The plaintiff essentially conceded at trial that her attempted "coup" was not the behavior of a rational person motivated by the best interests of Hall-Brooke and its patients.

[4] The court found that the plaintiff had agreed to forgo the rent until the school became profitable and thereby the plaintiff waived the rent during her tenure at Hall-Brooke from 1975 through her removal and until her failed coup. When she was removed from the premises and unable to retake control of Hall-Brooke, the court found that her offer to forgo the rent was withdrawn. It stated, "[t]his thwarted coup attempt was certainly an unequivocal act by Solomon showing an exercise of all rights she claimed."

[5] The court based this figure on an appraisal conducted in 1975 at the request of the board of trustees.

[6] Hall-Brooke moved for reargument and vacation or modification of the court's judgment. The court denied the motion except that it permitted the recalculation of the interest at 8 percent per year rather than at 10 percent per year for the portion of the rental period in which General Stat-

## I

The plaintiff asserts that the trial court improperly failed to order the defendant to pay back rent for the years prior to 1982. While agreeing that the court could find that the plaintiff had agreed to wait for payment of rent during the period that she was executive director and the school had not yet become profitable, the plaintiff argues that there was no factual basis for the court's finding that she had waived the rent for the years 1975 through 1980. She also argues that the court improperly concluded that her unsuccessful attempt to regain control of the institution on February 17, 1982, was the date on which her waiver of the rent terminated. We disagree.

When the factual basis of a trial court's decision is challenged, it is our function to "determine whether the facts set out in the memorandum of decision are supported by the evidence or whether, in light of the evidence and the pleadings in the whole record, those facts are clearly erroneous." *Pandolphe's Auto Parts, Inc.* v. *Manchester,* 181 Conn. 217, 221–22, 435 A.2d 24 (1980); *Zarembski* v. *Warren,* 28 Conn. App. 1, 4, 609 A.2d 1039 (1992). The factual finding of a trial court on any issue is reversible only if it is clearly erroneous. Practice Book § 4061.[7] "The factfinding function is vested in the trial court with its unique opportunity to view the evidence presented in a totality of circumstances, i.e., including its observations of the demeanor

utes § 37-3a provided that the rate of interest was 8 percent. The court subsequently granted the defendant's motion to open the judgment to recalculate prejudgment interest. The court adopted the calculations of the defendant. The amount of interest was subsequently reduced without objection from the plaintiff to $194,118.74.

[7] Practice Book § 4061 provides in pertinent part: "The court may reverse or modify the decision of the trial court if it determines that the factual findings are clearly erroneous in view of the evidence and pleadings in the whole record . . . ."

and conduct of the witnesses and parties . . . ." (Internal quotation marks omitted.) *Sportsmen's Boating Corporation* v. *Hensley,* 192 Conn. 747, 750, 474 A.2d 780 (1984). We do not dissect the record to see if the trier of fact could have reached a contrary conclusion. *Rodriguez* v. *New Haven,* 183 Conn. 473, 477, 439 A.2d 421 (1981); *Zarembski* v. *Warren,* supra, 4–5. Under this standard, our role is to determine if the trial court could reasonably have decided the way it did. *Harvey* v. *Daddona,* 29 Conn. App. 369, 374, 615 A.2d 177 (1992). Our role is not to retry the facts. *Zarembski* v. *Warren,* supra, 4. "In short, we are not permitted to reject a factual finding on appeal merely because we, as a reviewing court, might disagree with the conclusion or would have reached a different result had we been sitting as the factfinders. *Lupien* v. *Lupien,* 192 Conn. 443, 446, 472 A.2d 18 (1984)." *Biggs* v. *Warden,* 26 Conn. App. 52, 56, 597 A.2d 839, cert. denied, 221 Conn. 902, 600 A.2d 1029 (1991).

Our review of the record indicates that the factual findings challenged by the plaintiff are supported by the evidence. Here, the trial court reasonably could have found that the plaintiff's testimony that she had agreed to forgo the rent until the school became profitable and could afford to pay her was tantamount to a waiver of the rent. It also reasonably could have found that this offer to forgo the rent expired when she attempted to regain control at Hall-Brooke during her failed coup. The trial court's finding that the plaintiff agreed to forgo the payment of the rent for the school from May, 1975, through February, 1982, was thus not clearly erroneous.

## II

The plaintiff next claims that the court improperly failed to calculate periodic increases in the unpaid rent

applicable to the school building. She argues that the escalator clause, § 2.01 of the lease, entitles her to an increase in the rent for the school. She also argues that the prejudgment interest calculations must be reconsidered to take the changes in rent into account. We agree.

Section 2.01 of the lease provides in pertinent part that after January 1, 1974, the defendant agrees to pay the plaintiff "rent [that] shall be increased by ten (10%) percent for the next five year period; and thereafter the rent shall be increased at the end of each succeeding five (5) year period by ten (10%) percent of the rent of the previous five (5) year period as escalated. Such net annual rent . . . shall be in addition to, and over and above all other payments to be made by the Tenant as hereinafter provided, and such net rent shall be paid in equal monthly installments in advance of the first day of each calendar month during the term of this lease." On its face, this escalator clause applies to the rent paid by the defendant as lessee. After finding that the defendant owed back rent to the plaintiff as lessor for the school, the trial court failed to apply the escalator clause to that rent. The case must therefore be remanded to the trial court to recalculate damages applying the escalator clause to the increased back rent owed by the defendant to the plaintiff.

## III

The plaintiff further posits that the court improperly failed to order the defendant to pay the plaintiff's attorney's fees incurred in prosecuting this action. She argues that § 14.01 of the lease provides the landlord with the right to obtain attorney's fees.[8] We disagree.

---

[8] Section 14.01 of the lease provides in pertinent part: "Tenant will indemnify and save harmless Landlord against and from all liabilities, obligations, damages, penalties, claims, costs, charges and expenses, including reasonable architects' and attorneys' fees, which may be imposed upon or incurred

The plaintiff made no claim for attorney's fees in her complaint and introduced no evidence at trial of her attorney's fees. By failing to request attorney's fees prior to or during the trial, the plaintiff's assertion that the trial court acted improperly is without merit. *Francis T. Zappone Co.* v. *Mark,* 197 Conn. 264, 270, 497 A.2d 32 (1985); *Pero Building Co.* v. *Smith,* 16 Conn. App. 71, 74–75, 547 A.2d 59 (1988). "In the absence of any claim for attorney's fees in the prayer for relief, and without any offer of evidence during the trial, the trial court did not err in not making such an award." *Francis T. Zappone Co.* v. *Mark,* supra.

## IV

The defendant asserts that the trial court improperly held that the plaintiff was entitled to additional rent. It argues that the trial court ignored indications in the lease that § 28.02 did not apply to the school and that, in doing so, the trial court failed to apply appropriate rules of lease construction. The defendant further argues that although the court might have been permitted to look at extrinsic evidence of the parties' intentions, the court's findings are clearly erroneous because none of the evidence revealed that the parties ever intended that construction of the school would require additional rent. It suggests that any ambiguity in the lease should be construed against the plaintiff, who drafted the lease. We disagree.

Our Supreme Court has held that leases should be interpreted as contracts. *Hatcho Corporation* v. *Della Pietra,* 195 Conn. 18, 20, 485 A.2d 1285 (1985); *Amwax Corporation* v. *Chadwick,* 28 Conn. App. 739, 741, 617

by or asserted against Landlord by reason of any of the following occurring during the term of this lease: . . . e. Any failure on the part of Tenant to perform or comply with any of the covenants, agreements, terms or conditions contained in this lease on its part to be performed or complied with."

A.2d 127 (1992). When construing the lease, "three elementary principles must be kept constantly in mind: (1) the intention of the parties is controlling and must be gathered from the language of the lease in the light of the circumstances surrounding the parties at the execution of the instrument; (2) the language must be given its ordinary meaning unless a technical or special meaning is clearly intended; (3) the lease must be construed as a whole and in such a manner as to give effect to every provision, if reasonably possible." *Hatcho Corporation* v. *Della Pietra,* supra.

The trial court reached the correct result in finding that the defendant owed rent to the plaintiff for the school building, although we disagree with the method by which it reached that result. The trial court found that §§ 27.01 and 28.02 were ambiguous and admitted extrinsic evidence to determine if the parties intended to require additional rent to be paid for the school building. The lease, however, is clear on its face. Sections 27.01 and 28.02 are two separate clauses dealing with different issues. Section 27.01 provides that "Landlord hereby grants Tenant permission to construct the Children's Residential Treatment Center Complex on the premises, the plans and exact location of which shall be first approved by the Landlord. The amount of land anticipated for said Complex is approximately five (5) acres and has a present anticipated cost of $3,500,000 to $5,000,000. Any or all of said Complex may be commenced at any time after the date hereof." This section essentially provides for the plaintiff's preapproval of the defendant's plan to build a new facility. It is not concerned with the issue of rent for this facility. Section 28.02, however, addresses the rent requirements for enlargements to the facility that existed at the time the lease was executed. That section provides: "In the event enlargement or substantial alteration of the present facilities becomes necessary all plans and

projections must first be submitted to Landlord for approval and consent, which approval and consent will not be unreasonably withheld providing that the general character and use of the premises does not change, and further provided that the rental payments shall be adjusted to reflect the fair value of the land and other use of the facilities brought about by said enlargement or substantial alteration of the facilities." This section specifically provides that in the event of the enlargement of the facilities additional rent shall be due. The construction of the school in 1975 amounted to an enlargement of the facilities and hence additional rent became due. We are not required to reverse a ruling of the trial court that reached the correct result for the wrong reason. *State* v. *Lamme,* 19 Conn. App. 594, 604, 563 A.2d 1372 (1989), aff'd, 216 Conn. 172, 579 A.2d 484 (1990); *Vinchiarello* v. *Kathuria,* 18 Conn. App. 377, 381, 558 A.2d 262 (1989). The trial court thus correctly found that the defendant owed rent to the plaintiff for the school building.

V

The defendant also asserts that the trial court abused its discretion in awarding prejudgment interest without any evidence that Hall-Brooke's retention of the school rent was wrongful. We do not agree.

In its discretion in civil actions for the detention of money after it becomes payable, the trial court may award prejudgment interest. General Statutes § 37-3a.[9] This allowance turns on "whether the detention of the money is or is not wrongful under the circumstances. . . ." (Citation omitted; internal quotation

---

[9] General Statutes § 37-3a provides in pertinent part that "interest at the rate of ten per cent a year, and no more, may be recovered and allowed in civil actions . . . as damages for the detention of money after it becomes payable . . . ." An earlier version of this statute provided for interest at 8 percent per year. See footnote 6, supra.

marks omitted.) *Associated Catalog Merchandisers, Inc.* v. *Chagnon,* 210 Conn. 734, 748–49, 557 A.2d 525 (1989); *Newington* v. *General Sanitation Service Co.,* 196 Conn. 81, 90, 491 A.2d 363 (1985). "The allowance of interest as an element of damages is, thus, primarily an equitable determination and a matter lying within the discretion of the trial court. . . ." (Citation omitted; internal quotation marks omitted.) *Newington* v. *General Sanitation Service Co.,* supra; *Alderman* v. *RPM of New Haven, Inc.,* 20 Conn. App. 566, 569–70, 568 A.2d 1068 (1990).

Our courts "have seldom found an abuse of discretion in the determination by a trial court of whether a detention of money was 'wrongful.' " *Newington* v. *General Sanitation Service Co.,* supra; *Alderman* v. *RPM of New Haven, Inc.,* supra, 570. This court "must make every reasonable presumption in favor of [the trial court's] action" when reviewing a claim of abuse of discretion. *Yanow* v. *Teal Industries, Inc.,* 196 Conn. 579, 583, 494 A.2d 573 (1985); *Connecticut Bank & Trust Co.* v. *Winters,* 26 Conn. App. 317, 320, 600 A.2d 1046 (1991). The fact that this dispute is "hotly contested" does not impact on the trial court's determination that the defendant wrongfully detained the defendant's money. See *Harris Calorific Sales Co.* v. *Manifold Systems, Inc.,* 18 Conn. App. 559, 566, 559 A.2d 241 (1989). "Interest may be awarded at the statutory rate from the time the money becomes due. . . . The court's decision to award interest is subject to reversal only upon a showing of an abuse of discretion." (Citation omitted; internal quotation marks omitted.) Id. Here, the trial court did not abuse its discretion in awarding prejudgment interest.

We conclude that the trial court did not properly consider the escalator clause in its determination of back rent owed and its potential effect on the award of prejudgment interest.

On the plaintiff's appeal, the judgment is reversed as to the award of back rent only and the case is remanded to recompute the back rent owed to the plaintiff and to consider whether the plaintiff is entitled to additional prejudgment interest based on the increase of the back rent owed. On the defendant's appeal, the judgment is affirmed.

In this opinion the other judges concurred.