[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
Plaintiff sues in breach of contract and unjust enrichment for design service and furnishings provided for defendant's model home and in fraudulent conveyance based on a transfer of CT Page 5225 defendant's property allegedly without consideration to one of defendant's officers. Defendant denies plaintiff's allegations and counterclaims in vexatious suit and abuse of process for plaintiff filing an allegedly false affidavit supporting an ex parte prejudgment remedy obtained against defendant's property.
The facts relating to plaintiff's breach of contract claim are as follows: Plaintiff Motif Design, Inc. is a New York corporation engaged in the business of interior design of residences. Defendant Chase Associates, Inc. is a builder of single family homes and subdivisions of homes. Plaintiff's principal, Evelyn Peterson, had worked with defendant's principal, John Doran, on several homes in Fairfield County, so Doran was familiar with Peterson's billing practices of charging an hourly fee for her design services and cost plus overrides on furnishings purchased to decorate a home.
In July 1996 defendant retained the services of plaintiff to design the interior of a home to be used as a model for a 17 lot subdivision defendant was constructing in South Windsor, Connecticut, to be known as Chase Farms. Doran's primary concern was that the model be completed for a September opening of its sales campaign.
Doran had previously arranged for the decorating of three model homes (not with plaintiff) for a total cost of $100,000 and so he anticipated that plaintiff would charge for decorating the subject South Windsor model about $35,000. He did tell Peterson he wanted to keep to a tight budget and Peterson did say she would purchase ready made furnishings and use furniture dealers from whom she obtained deep discounts. The parties did not, however enter into a written contract for plaintiff's services and no fixed price was set.
Early on, Doran sent Peterson the plans for the model home and Peterson made suggestions for redesigning the layout of rooms for which design services plaintiff was paid.
Peterson's work included specifying for the model the floors and floor covering, choosing the wallpaper, tile and trim paint colors, changing electrical outlets, and purchasing all furniture and furnishings. She worked closely with Doran and occasionally the two went on shopping trips together for antiques for the model. CT Page 5226
Plaintiff, starting in July 1996, sent invoices to defendant itemizing design services at $125.00 an hour and purchase of wallpaper, furniture and furnishings at prices that did not reveal plaintiff's mark-up. Defendant did not complain about those bills.
Before September 25, 1996 those bills totaled slightly over $10,215. After the job was completed on or about September 25, 1996, additional bills were submitted, mainly for furniture and furnishings, totaling $46,734.00 and making plaintiff's final bill $56,949.00.
On October 16, 1996 Doran wrote a letter to Peterson protesting the bills. He admitted that he and she had not set "an exact dollar figure" on the cost of decorating and furnishing the model, but both had agreed to keep costs down. He found particularly outrageous that ready made furniture was re-upholstered with expensive fabrics, and window treatments, special pillow coverings and the like cost over $16,500.00.
Peterson testified Doran arranged for a photographic display and article about the model house in Woman's Day which required additional work from her to prepare the house. She also testified she performed services for defendant over thirteen days for which she did not charge.
Plaintiff also offered as a witness an interior designer, who had been a president of the American Society of Interior Designers, New York Metropolitan chapter, and who qualified as an expert on billings by members of her profession. She testified a 25% mark-up on purchases made to decorate a home was reasonable and that, based on familiarizing herself with plaintiff's services, plaintiff total price of $56,900.00 was also reasonable and in line with interior decorator billings.
The court finds that parties did not reach an agreement on the price plaintiff could charge but there was an overall understanding that costs would be kept down.
Based on all the evidence, including the expert's testimony, the fact plaintiff charged on some items a 27% mark-up rather than 25%, and plaintiff did not always comply with the understanding of the parties to minimizing costs, the court concludes plaintiff is entitled to recover for its services $50,000.00. CT Page 5227
Plaintiff's claim for fraudulent conveyances of the model home is moot since plaintiff ended up with an attachment on that house.
The facts relating to defendant's counterclaim for vexatious litigation and abuse of process are as follows. At the time that plaintiff initiated its suit, it also applied for an ex parte attachment on all the lots of defendant's subdivision. The count in fraudulent conveyance alleged the defendant corporation conveyed the model home without consideration to defendant Jodi Chase when defendant was insolvent or became insolvent as a result of such conveyance. The affidavit of Carl Friberg. CEO of plaintiff, in support of the application for the ex parte attachment, affirmed that the facts in the complaint and the application were true to his best knowledge and belief.
Conn. Gen. Stat. § 52-278e allows an ex parte attachment when defendant "(3) is about to fraudulently dispose of or has fraudulently disposed of any of his property to hinder, delay or defraud his creditors,. . ." Based on the papers plaintiff submitted, Judge Norris O'Neill granted the application.
Defendant moved to release and/or modify the ex parte pre-judgment remedy. At that hearing, the defendant and plaintiff agreed to plaintiff releasing the PR on all the lots of the defendant's subdivision except for the one on the model home.
At trial of this action, Peterson testified she relied on her attorney to seek the pre-judgment remedy. He advised her that defendant conveyed a model home to Jodi Chase for no consideration one day before defendant protested plaintiff's bill, and that from town records defendant's subdivision was heavily mortgaged. Beyond that Peterson made no investigation of defendant's solvency and specifically did not know Jodi Chase had a $300,000.00 mortgage on the model home which mortgage exceeded its appraised value of $290,000.00.
Doran testified defendant was current with all its mortgages, paid all its creditors, except the plaintiff because he felt plaintiff's bill was too high, successfully sold out the subdivision, never faced insolvency, and the transfer to Jodi had nothing to do with his refusing to pay plaintiff
The three elements of a cause of action for vexatious suit CT Page 5228 are want of probable cause, malice, and termination of the suit in favor of plaintiff. Vandersluis v. Weil, 176 Conn. 353, 346 (1978).
The essence of defendant's counterclaim is that plaintiff cannot prevail on its claim of fraudulent conveyance of the model house which was the ground for its application for the ex parte PJR. But that issue has never been resolved in defendant's favor because it was rendered moot by defendant consenting to an attachment in that house. Thus defendant failed to establish an essential element of its counterclaim.
Moreover, defendant did not prove malice. Malice in this context means acting "for a purpose other than that of recovering the proper adjudication of the claim on which [the proceedings] are based." 3 Restatement (Second) Torts § 676; DeLaurentisv. New Haven, 220 Conn. 225, f.n. 16 at 256. Here there was noDeLaurentis v. New Haven, 220 Conn. 225, f.n. 16 at 256. Here there was no evidence that plaintiff sought the PJR other than to secure a potential judgment for services rendered.
Finally, a further basis for deciding for plaintiff is that plaintiff relied upon the advice of its counsel. As our Supreme Court said in Vandersluis v. Weil, supra at 361, "Advice of counsel is a complete defense to an action of . . . vexatious suit when it is shown that the [party] . . . initiated his civil action relying in good faith in such advice,. . . The fact that the attorney's advice was unsound or erroneous will not affect the result."
Defendant's counterclaim of abuse of process must also fail because defendant has not established that the PJR was sought "primarily to accomplish a purpose for which it is not designed." (original emphasis). As stated above, defendant has not shown plaintiff obtained the PR for a objective other than security for a judgment.
Under all the facts and law of this case the court concludes judgment may enter for the plaintiff on the complaint for $50,000.00 and judgment may enter for the plaintiff on defendant's counterclaim. The court exercises its discretion under Conn. Gen. Stat. § 37-3a to deny to plaintiff prejudgment interest. Soloman v. Hall-Brooke Foundation, Inc.,30 Conn. App. 136, 146-47 (1993). CT Page 5229
Robert Satter, Judge Trial Referee