[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION RE: MOTION FOR SUMMARY JUDGMENT #125
This matter comes before the court on the defendant's motion for summary judgment on all four counts of the complaint. For reasons stated herein, the motion is granted in part and denied in part.
 FACTS
The parties to this action were divorced on July 29, 1998. The plaintiff brought this action against his former wife alleging breach of the parties' separation agreement (first count), violation of his right to give prior consent to tape-record his telephone conversations in violation of § 52-570d (second count), negligent infliction of emotional distress (third count), and intentional infliction of emotional distress (fourth count).
The defendant moves for summary judgment as to all counts of the complaint. Attached to her motion is a decision rendered by the court,Sheedy, J., regarding a motion to dismiss an attempted modification, a copy of the separation agreement, her own affidavit, and a copy of the separation agreement which she avers is a true and accurate copy. The plaintiff objects to the motion for summary and has attached portions of the separation agreement, a partial transcript of the trial when the parties agreed to enter into the separation agreement, a copy of his CT Page 10588 motion to correct/reconsider/reargue the modification decision and his own affidavit.
 DISCUSSION
Summary judgment "shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Practice Book § 17-49. Summary judgment "is appropriate only if a fair and reasonable person could conclude only one way." Miller v. United Technologies Corp., 233 Conn. 732, 751,660 A.2d 810 (1995). "In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party." (Internal quotation marks omitted.) Cunha v. Colon,260 Conn. 15, 18 n. 6, 792 A.2d 832 (2002). The movant has the burden of demonstrating the absence of any genuine issue of material fact. Appletonv. Board of Education, 254 Conn. 205, 209, 757 A.2d 1059 (2000). "[T]he movant must make a showing that it is quite clear what the truth is, and that excludes any real doubt as to the existence of any genuine issue of material fact." Witt v. St. Vincent's Medical Center, 252 Conn. 363, 372
n. 7, 746 A.2d 363 (2000). "[T]he party opposing such a motion mustprovide an evidentiary foundation to demonstrate the existence of a genuine issue of material fact." (Emphasis in original; internal quotation marks omitted.) Mytch v. May Department Stores Co.,260 Conn. 152, 164 n. 8, 793 A.2d 1068 (2002). "A material fact has been defined adequately and simply as a fact which will make a difference in the result of the case." (Internal quotation marks omitted.) BuellIndustries, Inc. v. Greater New York Mutual Ins. Co., 259 Conn. 527,556, 791 A.2d 489 (2002).
The defendant has argued that she is entitled to summary judgment on all four counts of the complaint. She has argued that her documentation demonstrates that she has not breached the agreement and, therefore, there is no genuine issue of material fact regarding the first count of the complaint. She also argues that her conduct was not illegal and, therefore, she is owed summary judgment on the second, third and fourth counts. The court shall consider each count in turn.
 I
On July 29, 1998, the plaintiff and the defendant entered into a separation agreement. Clause 15.1 provides that "[a]ll matters affecting the interpretation of this Agreement and the rights of the parties hereto shall be governed by the laws of the State of Connecticut. Connecticut shall retain jurisdiction over the parties and this Agreement." The complaint alleges that the defendant violated this agreement by filing CT Page 10589 her modification in a New York state court.
As a threshold matter, the court notes that it is appropriate to litigate a breach of a separation agreement in a civil action for breach of contract. "Such contracts are enforced by actions brought upon the contracts themselves and the remedies are no other or different than the remedies provided by law for the breach of any other contract." (Citation omitted; internal quotation marks omitted.) Lasprogato v. Lasprogato,127 Conn. 510, 514, 18 A.2d 353 (1941). See also Harvey v. Daddona,29 Conn. App. 369, 374, 615 A.2d 177 (1992) ("Separation agreements executed with and incorporated into dissolution decrees are construed and enforced as contracts.)
The plaintiff's first count is premised upon a breach of the parties' separation agreement. The complaint alleges that the "the parties agreed . . . the rights of the parties and future issues over the same would be litigated in the State of Connecticut" and that the defendant breached this agreement by first going to a New York court for a modification. (Complaint, Count One, ¶¶ 2, 4.) The contract, however, contains no such provision.
"Although ordinarily the question of contract interpretation, being a question of the parties' intent, is a question of fact . . . [w]here there is definitive contract language, the determination of what the parties intended by their contractual commitments is a question of law. . . . When only one interpretation of a contract is possible, the court need not look outside the four corners of the contract." (Internal quotation marks omitted.) Regency Savings Bank v.Westmark Partners, 70 Conn. App. 341, 345,798 A.2d 476 (2002).
The provision at issue in this case provides that "Connecticut shall retain jurisdiction over the parties and this Agreement." This clause seeks to make Connecticut take jurisdiction over this case when neither the state of Connecticut nor its courts are a party to the contract. Generally, "the obligation of contracts is limited to the parties making them. . . ." 17 Am.Jur.2d, Contracts § 294 (1964). This provision, by attempting to obligate the state of Connecticut to take jurisdiction over a matter when Connecticut is not a party to the contract, is improper.[1] Accordingly, the defendant in the present case could not have breached the separation agreement when she filed the action seeking to modify the divorce judgment in a New York state court. The operative clause does not obligate her to do anything, but instead improperly attempts to obligate the state of Connecticut and, therefore, her actions did not breach the agreement. CT Page 10590
Moreover, clause 15.1 contains an additional problem. "Subject matter jurisdiction . . . cannot be created through consent or waiver." Gary v.Department of Correction, 68 Conn. App. 590, 596, 792 A.2d 874 (2002). The plaintiff contends that the Uniform Child Custody Jurisdiction Enforcement Act (UCCJEA) has overruled, at least as to child custody agreements, this tenant of our common law.
In the prior action, the court, Sheedy, J., stayed the modification proceedings, citing forum non conveniens. General Statutes § 46b-115q (b) provides in relevant part that "[i]n determining whether a court of this state is an inconvenient forum and that it is more appropriate for a court of another state to exercise jurisdiction, the court shall . . . consider all relevant factors including . . . (5) any agreement of the parties as to which state should assume jurisdiction. . . ." The plaintiff contends this provision overrules our common law rule regarding consent to jurisdiction.
Judge Sheedy found that clause 15.1 was mere boilerplate, citing Mullerv. Muller, 43 Conn. App. 327, 682 A.2d 1089 (1996). Taking the plaintiff's argument to conclusion, the overruling of Muller allows parties to agree to jurisdiction in any forum for child custody purposes.
If parties could consent to jurisdiction in any forum, provisions of the UCCJEA itself would be meaningless. General Statues § 46b-115k
provides that "a court of this state has jurisdiction to make an initial child custody determination if' certain facts are present. Notably, an agreement by the parties that a court shall have subject matter jurisdiction is not one of those factors. General Statues § 46b-115l
provides that "a court of this state which has made a child custody determination pursuant to sections 46b-115k to 46b-115m, inclusive, has exclusive, continuing jurisdiction over the determination until" certain determinations are made by Connecticut or other state courts.[2]
Again, not included in this determination is whether the parties have agreed that a court shall take subject matter jurisdiction.
"In interpreting the language of a statute, we are guided by the premise that we must consider the statute as written and read it as a whole. . . . [N]o part of a legislative enactment is to be treated as insignificant or unnecessary, and there is a presumption of purpose behind every sentence, clause or phrase . . . and no word in a statute is to be treated as superfluous. Insofar as it is possible, the entire enactment is to be harmonized, each part made operative. . . . We approach this task mindful of the assumption that the legislature intended to accomplish a reasonable and rational result." (Citations omitted; internal quotation marks omitted.) Keeney v. Fairfield Resources, Inc.,41 Conn. App. 120, 131, 674 A.2d 1349 (1996). In order to give consistent CT Page 10591 meaning to § 46b-115q (b), the relevant section cannot allow the parties to confer subject matter jurisdiction upon a court, because to do so would contravene parts of the UCCJEA.
The court recognizes that § 46b-115q (b)(5) does allow consideration of an agreement of jurisdiction between the parties. What type of jurisdiction, however, is not specified. "There are three separate elements of the jurisdiction of a court: jurisdiction over the person, jurisdiction over the subject matter, and jurisdiction to render the particular judgment." Rummel v. Rummel, 33 Conn. App. 214, 217, 635 A.2d 295
(1993). Parties may waive or consent only to personal jurisdiction. Id., 218. In order to read § 46b-115q (b) as not invalidating other provisions of the UCCJEA, the court interprets this provision as the parties' agreement to personal jurisdiction. Such an interpretation has been employed by our Appellate Court with a different statute which uses the word "jurisdiction" without specifying which kind of jurisdiction. See In re Baby Girl B., 224 Conn. 263, 288, 618 A.2d 1 (1992) (finding that the words "continuing jurisdiction" within General Statutes §52-212a referred to personal jurisdiction); Sicaras v. Hartford,44 Conn. App. 771, 778, 692 A.2d 1290, cert. denied, 241 Conn. 916,696 A.2d 340 (1997) (same).
Even though clause 15.1 was drafted to confer subject matter jurisdiction on Connecticut courts, Connecticut law does not allow such a conferral, even under the UCCJEA. Accordingly, the defendant is granted summary judgment as to the first count.
 II A
The defendant contends that she is owed summary judgment on the second count of the complaint because New York law is the controlling law and that recording one's own phone conversations is not actionable in New York. The plaintiff presents two counter-arguments. First, the plaintiff argues that Connecticut law should apply to this case under a conflict of law analysis. Second, the plaintiff argues there is a genuine issue of material fact as to the second count because he has averred that the plaintiff told him that she recorded some of the phone conversations while she was in Connecticut.
The defendant argues that Connecticut law cannot apply outside its borders and that New York does not make it criminal to record one's own phone conversations. The defendant is correct that criminal liability does not attach in New York when one records one's own phone conversations without the other party's knowledge; N.Y. Penal Law §§ 250.00, CT Page 10592 250.05;[3] however, this does not answer whether New York law allows a civil cause of action for such practices.
In Talmor v. Talmor, 185 Misc.2d 293, 712 N.Y.S.2d 833 (2000), the New York trial court was presented with the equivalent of a motion to strike in a case where it was alleged that one spouse had tape recorded the phone conversations of another spouse. The judge declined to find a private cause of action under N.Y. Penal Law § 250.00 for two reasons. "Firstly, while there does not appear to be a case in point coming out of the Second Department, the Appellate Divisions in both the First and Fourth Departments have already considered this issue and have declined to find that such a right may be inferred from Article 250 of the Penal Law, after applying the appropriate test for the finding of a private right of action under a penal statute as determined by the Court of Appeals in Burns Jackson Miller Summit Spitzer v. Lindner,59 N.Y.2d 314, 464 N.Y.S.2d 712, 451 N.E.2d 459; see, also, Greenfield v.Schultz, 251 App.Div.2d 67,673 N.Y.S.2d 684; Fern v. International BusinessMachines, 204 App.Div.2d 907,612 N.Y.S.2d 492. Secondly, any question as to whether the Court of Appeals is inclined to overrule its `old' decision in Roberson v. Rochester Folding Box Co., 171 N.Y. 538, 64 N.E. 442, holding that no common law right to privacy exists in New York, was plainly dispelled as recently as 1993 by its decision in Howell v. New YorkPost Company, 81 N.Y.2d 115, 123-124, 596 N.Y.S.2d 350, 612 N.E.2d 699, wherein the Court observed:
 `While the courts of other jurisdictions have adopted some or all of these torts, in this State the right to privacy is governed exclusively by sections 50 and 51 of the Civil Rights Law; we have no common law of privacy (Stephano [v. News Group Publications, Inc.], 64 N.Y.2d [174], at 182 [485 N.Y.2d 220, 474 N.E.2d 580]; Arrington [v. New York Times Co.], 55 N.Y.2d [433], at 439-440 [449 N.Y.S.2d 941, 434 N.E.2d 1319]; Cohen v. Hallmark Cards, 45 N.Y.2d 493, 497, n 2 [410 N.Y.S.2d 282, 382 N.E.2d 1145]; Flores v. Mosler Safe Co., 7 N.Y.2d 276, 280 [196 N.Y.S.2d 975, 164 N.E.2d 853]). Balancing the competing policy concerns underlying tort recovery for invasion of privacy is best left to the Legislature, which in fact has rejected proposed bills to expand New York law to cover all four categories of privacy protection (see, Arrington, 55 N.Y.2d at 440
[449 N.Y.S.2d 941, 434 N.E.2d 1319]).'
There being no common-law right to privacy in New York and no private right of action under the Penal Law, the second cause of action must likewise be, and hereby is, [stricken]." Id., 296. CT Page 10593
Connecticut's legislature, on the other hand, has provided for a right of action for recording phone conversations without the consent of both parties. Section 52-570d (a) provides, in relevant part, that "[n]o person shall use any instrument, device or equipment to record an oral private telephonic communication unless the use of such instrument, device or equipment (1) is preceded by consent of all parties to the communication and such prior consent either is obtained in writing or is part of, and obtained at the start of, the recording, or (2) is preceded by verbal notification which is recorded at the beginning and is part of the communication by the recording party, or (3) is accompanied by an automatic tone warning device. . . ." Subsection (c) of § 52-570d
provides for a private cause of action.
Given that the activity occurred both in New York and Connecticut, the court shall undergo a choice of law analysis to determine whether to apply New York or Connecticut law.[4] In order to choose the proper analysis, the court looks to the Restatement (Second) of Conflict of Laws.[5]
The Restatement (Second) does not provide rules for the specific cause of action concerning taping a phone conversation. It does, however, have rules for right to privacy torts. Section 152 of the Restatement (Second) of Conflict of Laws provides that "[i]n an action for an invasion of a right of privacy, the local law of the state where the invasion occurred determines the rights and liabilities of the parties . . . unless, with respect to the particular issue, some other state has a more significant relationship under the principles stated in § 6 to the occurrence and the parties, in which event the local law of the other state will be applied."[6]
Because the touchstone of the rule is where the invasion occurred, it is useful to determine how the Restatement (Second) defines the place of invasion of privacy. "When the invasion involves an intrusion upon the plaintiff's solitude, the place of the invasion is the place where the plaintiff was at the time. When the invasion involves the publication of information about the plaintiff . . . the place of the invasion is where the complained-of matter was communicated to a person other than the plaintiff." 1 Restatement (Second), Conflicts of Law § 152, comment (c) (1971). There is no allegation of publication of the recorded phone calls. Moreover, the allegedly tortious conduct was the recording of phone calls. The plaintiffs and defendant's affidavits both confirm that the plaintiff was in Connecticut when recorded. Because this case is more akin to an invasion of seclusion, the court finds that the invasion occurred in Connecticut. CT Page 10594
The Restatement (Second) also details, in the comments, what is to be done when the invasion and the conduct occur in different states. "In such instances, the local law of the state where the invasion occurred will usually be applied to determine most issues involving the tort. . . . " 1 Restatement (Second), supra, § 152, comment (f). There is some dispute as to whether the defendant recorded the phone conversations solely within New York or within both New York and Connecticut. Such a factual dispute, for the purposes of choice of law, is not material because § 152 of the Restatement (Second) looks to where the invasion occurred, and both parties agree that the plaintiff received all the offending phone calls in Connecticut.
Section 152 of the Restatement (Second) leads the court to choose Connecticut law because Connecticut is where the plaintiff's seclusion was violated and, thus, was where the invasion occurred. The court, however, must also look to the factors of § 6 of the Restatement (Second) to determine whether New York has a more significant relationship than Connecticut.
 B
Section 6 of the Restatement (Second) lists seven factors the court must consider to determine which state has the most significant relationship to the case: (1) "the needs of the interstate and international systems"; (2) "the relevant policies of the forum"; (3) "the relevant policies of other interested states . . . "; (4) "the protection of justified expectations"; (5) "the basic policies underlying the particular field of law"; (6) "certainty, predictability and uniformity of result"; and (7) "ease in the determination and application of the law to be applied." Each factor shall be examined in turn.
No particular needs of the interstate system would be undercut by application of either state's law. While the plaintiff and the defendant are engaged in a child custody case that has now gone from Connecticut's courts into New York's courts, such an issue has been dealt with using the child custody laws of those states. The needs of the system will not be affected by a collateral case regarding the plaintiff's statutory right to privacy or lack thereof. Accordingly, this factor is irrelevant for the purposes of the present motion.
The policies of Connecticut, the second factor, are evident from the statute and its accompanying legislative history. The statute seeks to protect parties to phone conversations from being recorded without their consent. "I think that what the bill is reaching to is a sense that many of us have that there is a right of privacy. It's not specifically spelled out in the Constitution [of the United States] or in the first ten CT Page 10595 amendments to the Constitution but I think the every American has a feeling that there are certain areas where he is entitled to a degree of privacy and I think the conversation between two individuals falls into that category and if one individual decides he is going to tape the conversation over a telephone or however it is done, [he] really has an obligation to inform the other party that the taping has occurred and then that party has the option to continue the conversation or not continue it." 33 S. Proc., Pt. 5, 1990 Sess., pp. 1415-16, remarks of Senator O'Leary. When asked what harm the statute attempted to remedy, Representative Mintz replied: "I believe it is a privacy issue that when you're a party to a telephone conversation you should know whether or not that telephone conversation is private, or if it's being recorded." 33 H.R. Proc., Pt. 30, 1990 Sess., p. 10524, remarks of Representative Mintz. From the remarks made during deliberations on the bill, it is clear that the policy of the state is to protect the privacy of people's phone conversation.
New York's policy, the third factor, is stated in Howell v. New YorkPost Co., 81 N.Y.2d 115, 596 N.Y.S.2d 350 (1993). "Balancing the competing policy concerns underlying tort recovery for invasion of privacy is best left to the Legislature, which in fact has rejected proposed bills to expand New York law to cover all four categories of privacy protection." Id., 123-24. New York has decided to leave to its legislature the task of crafting rights to privacy and its legislature, thus far, has declined to confer such a right.
The fourth factor is protection of justified expectations. The comments to the Restatement (Second) provide that "it would be unfair and improper to hold a person liable under the local law of one state when he had justifiably molded his conduct to conform to the requirements of another state." 1 Restatement (Second), supra, § 6, comment (g). In the present case it would not be unfair to hold the defendant liable for her conduct. Because this is a tort case, it is unusual to find that a defendant conformed her actions to the local law of any state. "There are occasions, particularly in the area of negligence, when parties act without giving thought to the legal consequences of their conduct or to the law that may be applied. In such situations, the parties have no justified expectations. . . ." Id. Moreover, the defendant has admitted in her affidavit to recording phone calls she made to Connecticut. It would not be unfair to hold a defendant liable when she is aware that her actions affect someone in Connecticut.
The fifth factor, basic policies underlying the particular field of law, "is of particular importance in situations where the policies of the interested states are largely the same but where there are nevertheless minor differences between their relevant local law rules." 1 Restatement CT Page 10596 (Second), supra, § 152, comment (h). This factor is not important. The policies between New York and Connecticut law, in this context, are divergent. The Connecticut legislature has decided to protect the privacy interests of those who engage in telephone conversations. The New York legislature, as stated in Howell, has so far declined. Accordingly, this factor is irrelevant.
The sixth factor is uniformity and predictability. Its stated purpose is to discourage forum shopping. 1 Restatement (Second), supra, § 152, comment (i). Applying Connecticut law would discourage forum shopping. In the present case, the defendant knew that her actions affected a citizen of Connecticut. If she were allowed to apply New York law, she would be able to take advantage of New York law and invade a privacy right of a Connecticut citizen simply because she recorded the conversation in New York or because she lived in New York. Accordingly, this factor leads to Connecticut having a more significant relationship.
The final factor is ease in determining the law. This factor is irrelevant. Neither Connecticut nor New York law is difficult to determine in the present case. If Connecticut law is applied, the statute is applied and it is tortious to record the phone conversation without the consent of both parties, subject to enumerated exceptions. General Statutes § 52-570d. New York law is similarly easy to apply. If applied, the defendant could not be held liable because New York law does not provide a right to privacy in phone conversations and summary judgment could enter. Accordingly, this factor does not point to application of either law.
Applying the § 6 factors of the Restatement (Second), Connecticut has the more significant relationship to the present case. New York's interest in this case does not outweigh Connecticut's interest because the § 6 factors either are irrelevant or show that Connecticut has a greater interest in protecting the privacy of its citizens. Accordingly, the court follows Restatement (Second) § 152 and will apply Connecticut's law to the present case.
When Connecticut law is applied to the present case, summary judgment cannot enter for the defendant. She has admitted to recording conversations with the plaintiff without his knowledge. She has not claimed any enumerated exception in § 52-570d. Accordingly, summary judgment as to the second count if denied.
 III
The defendant has also argued that she is owed summary judgment on the third and fourth counts of the complaint, alleging negligent and CT Page 10597 intentional infliction of emotional distress respectively, because she did not "illegally" record the phone calls between herself and the plaintiff. As discussed in Part II, the basic premise of the argument is incorrect because Connecticut law applies to this case.
Moreover, whether recording a phone call has tortiously caused emotional distress does not necessarily depend upon whether the phone call was permissibly recorded. "For the plaintiff to prevail on a claim of intentional infliction of emotional distress, four elements must be established. It must be shown: (1) that the actor intended to inflict emotional distress or that he knew or should have known that emotional distress was the likely result of his conduct; (2) that the conduct was extreme and outrageous; (3) that the defendant's conduct was the cause of the plaintiff's distress; and (4) that the emotional distress sustained by the plaintiff was severe." (Internal quotation marks omitted.) Diamondv. Yale University, 66 Conn. App. 764, 765-66, 786 A.2d 518 (2001), cert. denied, 259 Conn. 906, 789 A.2d 994 (2002).
As for negligent infliction of emotional distress, the plaintiff must allege and prove emotional injury caused by negligent conduct and that "the defendant should have realized that its conduct involved an unreasonable risk of causing emotional distress and that that distress, if it were caused, might result in illness or bodily harm." (Internal quotation marks omitted.) Scanlon v. Connecticut Light Power Co.,258 Conn. 436, 446, 782 A.2d 87 (2001).
Neither test requires that the alleged conduct be wrongful in itself. Because the defendant did not properly argue her motion, the court declines to determine whether the conduct shown and alleged would constitute intentional or negligent infliction of emotional distress.
 CONCLUSION
For the above-stated reasons, the court grants the motion for summary judgment as to the first count and denies the motion for summary judgment as to the second, third and fourth counts.
GALLAGHER, J.